UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-343-GWU

BOBBY A. HELTON,                                          PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI).  The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to
      Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

06-343 Helton

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

06-343 Helton

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

06-343 Helton

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately

06-343 Helton

portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of
Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Bobby A. Helton, was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of ongoing alcohol abuse and
dependence; ongoing cannabis abuse, rule out dependence; a history of substance-
induced mood disorder; a history of polysubstance abuse; borderline intellectual
functioning, rule out upper end borderline to lower end low average intellectual
functioning; rule out functional illiteracy; lower back pain and chest wall pain, "rule
out secondary to status post fracture of the transverse processes of L4, rule out
status post transverse processes fracture of L5 versus compression fracture of L4-5
and/or mild scoliosis of the lumbar spine and/or degenerative disc disease;" multiple
right rib fractures; and substance-induced mood disorder.  (Tr. 264).  Nevertheless,
based in part on the testimony of two medical experts (MEs) and a vocational expert
(VE),  the ALJ determined that Mr. Helton retained the residual functional capacity
to perform a significant number of jobs existing in the economy, and therefore was
not entitled to benefits.  (Tr. 274-9).  The Appeals Council declined to review (Tr.
253-5), and this action followed.

The ALJ submitted interrogatories to the VE asking whether a person of the
plaintiff's age, education, and work experience could perform any jobs if he were
limited to "light" level exertion, with the ability to stand and walk four to six hours in

7

an eight hour day (one to two hours without interruption) and sit six hours in an eight hour day (no more than two hours without interruption), and also had the following non-exertional impairments.  He: (1) could never climb ladders, ropes, scaffolds or stepstools, or crawl; (2) could occasionally climb ramps or stairs, balance, stoop, crouch, and kneel; (3) could not constantly use his upper extremities for pushing, pulling, reaching, handling, or for overhead work activity; (4) could not use his lower extremities for pushing, pulling, or to operate foot controls or levers; (5) had to avoid unprotected heights and moving machinery, temperature extremes, chemicals, dust, fumes, excessive humidity, and all other unusual pulmonary irritants; (6) must avoid vibration; (7) required a low stress, entry level, non-production quota work environment with simple, repetitive one-two or at most three step work procedures with minimal changes in the work routine and minimal exposure to the general public; and (8) "functional illiteracy should be ruled out."  (Tr. 371).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 374).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Helton alleged disability due to injuries to his back, pelvis, and ribs from a motorcycle accident, and arthritis in his toes and hands.  (Tr. 107).  The issues presented on appeal do not specifically concern any challenge to the ALJ's

conclusions regarding his physical capacities, however.  The plaintiff asserts that

he meets the Commissioner's Listing of Impairment 12.05C, which provides in

pertinent part as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., *the evidence demonstrates or supports onset of the impairment before age 22.*
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>  . . .
>
> C.  A. Valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.05 (emphasis added).

The plaintiff also argues that the hypothetical question did not properly

account for his restrictions resulting from depression and anxiety.

The plaintiff underwent three consultative psychological assessments.

Dr. Gary Maryman examined Mr. Helton on June 19, 2000.  He told Dr.

Maryman that he was unable to read and write, despite completing high school to

approximately the tenth grade, and never had a valid driver's license. (Tr. 219).  He

also denied any history of alcohol abuse or drug abuse, although he had had arrests

for public intoxication and driving under the influence.  (Tr. 221).  Dr. Maryman's

testing showed a verbal IQ of 71, a performance IQ of 70, and a full scale IQ of 68,

which the examiner believed to be a reasonable representation of his actual

capabilities.  (Tr. 222).  The scores were said by Dr. Maryman to be at the low end of the borderline intellectual functioning level.  (Id.).  Achievement testing showed that Mr. Helton was totally illiterate, although Dr. Maryman cast doubt on its accuracy.  (Id.).  Dr. Maryman diagnosed alcohol abuse by history (provisional and suspected), and borderline intellectual functioning.  (Tr. 224).

Dr. Jeanne M. Bennett, another psychologist, examined Mr. Helton on December 18, 2004.  Mr. Helton told Dr. Bennett that he had a driver's license at one point, but it was revoked for a DUI, and he never got it back.  (Tr. 494).  He stated that he had passed his driver's license orally, and claimed to be illiterate.  (Tr. 497).  One of his past jobs involved driving a catering truck for six to seven years.  He claimed only an eighth grade education.  (Tr. 495).  He stated that he had been treated for alcohol abuse, but did not consider that alcohol had ever been a major problem for him.  (Tr. 496).  Dr. Bennett noted that, although the plaintiff outwardly appeared cooperative, testing on the Rey 15 Item Memory Test indicated malingering, and she believed that he did not put forth maximal effort.  (Tr. 498-9).  IQ testing on this occasion showed a verbal score of 66, a performance score of 65, and a full scale score of 63.  (Tr. 500).  Dr. Bennett stated that the results might be an understatement of Mr. Helton's true abilities and should be used with caution.  (Id.).  The self-scoring Beck depression and anxiety tests showed that the plaintiff felt that he was severely depressed and anxious.  (Tr. 502).  Dr. Bennett did

06-343 Helton

diagnose a depressive disorder and a generalized anxiety disorder, but not mild mental retardation.  (Tr. 503).

Finally, Dr. Robert J. Fitz examined Mr. Helton on April 18, 2005, and also reviewed previous records.  (Tr. 537).  On this occasion, Mr. Helton had another story regarding his driver's license, saying that it had expired years ago but had never been suspended.  (Tr. 538).  Noting that some of the prior records showed a history of hospitalizations for hallucinations, Dr. Fitz elicited the admission that these hallucinations had only occurred during periods of substance abuse.  (Tr. 539).  The plaintiff claimed that he had not had a drink since the previous Thanksgiving, and he had not used marijuana for "awhile." (Tr. 541).  A friend of the plaintiff's, who had accompanied him to the examination, told Dr. Fitz that Mr. Helton had limited literacy, but was able to write his name and read an uncomplicated letter, and also that he had been picked up five or six months ago for DUI, had been held in jail for 60 days, and immediately started drinking again when he was released.  (Tr. 540).  However, after a hospitalization, he had recently stopped drinking.  (Id.).  Mr. Helton described some of his past jobs as including running a bulldozer for 18 months at a reclamation site, running a shuttle and scoop in the coal mines, and driving a forklift.  (Tr. 542).  IQ testing on this occasion showed a verbal score of 68, a performance score of 73, and a full scale score of 67, but Dr. Fitz did not consider the scores accurate because the plaintiff did not seem to be giving his best effort.  (Tr. 543-4).  Achievement testing showed reading

11

at the kindergarten level, but Mr. Helton gave up easily and was not willing to attempt even simple words. (Tr. 544). Dr. Fitz diagnosed a history of alcohol and cannabis abuse and a history of substance-induced mood disorder with depression. He felt that if Mr. Helton remained free of alcohol and other substance abuse, he might have no significant mood disorder. (Tr. 550).

Dr. Neal Lewis testified as a medical expert at the most recent administrative hearing, and stated that the plaintiff's most significant psychological problems were his long history of alcohol and marijuana abuse, although there was also an issue with his level of intellectual functioning. (Tr. 621). Despite his test scores, Dr. Lewis felt that he would assess the plaintiff's functioning at the borderline level, partly because of his poor effort on testing and partly because the jobs he held could not be performed by someone with mild mental retardation. (Tr. 621-2). Absent alcohol and cannabis abuse, he opined that the plaintiff could perform low stress, entry level work, with simple work procedures involving minimal changes in the work routine and minimal exposure to the general public. (Tr. 624). This restriction was consistent with the hypothetical question. As far as the possibility of meeting Listing 12.05C was concerned, Dr. Lewis stated that, even if Dr. Maryman's test scores had been valid, he saw no indication of subaverage intellectual functioning before age 22. (Tr. 627, 630). School records submitted as a part of the plaintiff's application show an IQ score of 77 achieved in September, 1970, when Mr. Helton was in the

06-343 Helton

ninth grade.  (Tr. 398).  While the other school records submitted show generally poor grades, there is no indication of special education.  (Tr. 395).

Therefore, the ALJ had ample grounds to discount the validity of the specific IQ test score results, and the plaintiff failed to show that he met the requirement of Listing 12.05C that there was onset of deficits in adaptive functioning prior to age 22.  Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001).

The plaintiff's other argument on appeal was that he had significant depression and anxiety apart from his substance abuse problems which were not accounted for in the hypothetical question.  Since all of the psychological examiners did record some degree of a problem with substance abuse, it is difficult for the plaintiff to establish the discrete functional impact of the other problems.  Even Dr. Bennett, who did not specifically diagnose substance abuse, indicated that the plaintiff would have a "limited but satisfactory" ability to make most occupational, performance, and personal-social adjustments, with the exception of a "seriously limited but not precluded" ability to understand, remember, and carry out complex job instructions and demonstrate reliability.  (Tr. 505-7).  However, a review of the record shows numerous hospitalizations and emergency room visits for problems related to alcohol or other drug intake.  (E.g., Tr. 156, 236, 414, 416, 427, 454-5, 457, 459, 461, 508, 571).  His most recent hospitalization, on August 31, 2005, came after drinking one quart of whiskey a day for one week.  (Tr. 575).  However, he improved with medications and abstinence.  (Tr. 593).  The ALJ had reasonable

06-343 Helton

grounds to question whether the plaintiff's mood disorders would have been disabling in the absence of substance abuse, and the testimony of Dr. Lewis provided substantial evidence to adopt the specific functional restrictions given in the interrogatory to the ME.  Accordingly, there was no error.

Although the plaintiff does not raise any specific issue regarding his physical restrictions, the Court notes in passing that the hypothetical factors were supported by the testimony of another ME who testified at the most recent hearing (Tr. 610), and the ALJ actually gave Mr. Helton considerable benefit of the doubt.

The decision will be affirmed.

This the 13th day of June, 2007.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**